John HERRERA, Plaintiff–Appellant,

v.

Paul A. REICHER, Sr., and American Family Mutual Insurance Company, Defendants–Respondents.

No. WD 31282.

Missouri Court of Appeals, Western District.

Nov. 3, 1980.

Ronald R. Holliger, Kansas City, for plaintiff–appellant; Koenigsdorf, Kusnetzky & Wyrsch, Kansas City, of counsel.

Thos. J. Conway, Thomas B. Alleman and Stephen J. Moore, Kansas City, for defendants–respondents; Popham, Conway, Sweeny, Fremont & Bundschu, Kansas City, of counsel.

Before PRITCHARD, P. J., SWOFFORD, J., and FLANIGAN, Special Judge.

FLANIGAN, Special Judge.

In 1976 plaintiff John Herrera was struck by an automobile owned by Paul A. Reicher, Sr. ("Reicher") and driven by his son, Paul Reicher, Jr. ("Paul, Jr."). Reicher carried a policy of liability insurance with American Family Mutual Insurance Company ("American Family"). Herrera brought a tort action against Paul, Jr. and Reicher. A jury awarded plaintiff $8,000 on his claim against Paul, Jr. but denied him recovery on his claim against Reicher. Judgment was entered on the verdict.

Later the instant action was filed by plaintiff Herrera against defendants Reicher[1] and American Family. The petition sought payment (see § 379.200)[2] under the American Family policy of the $8,000 judgment, then final, which plaintiff had obtained against Paul, Jr. in the tort action. Attached as exhibits and incorporated in the petition were the petition in the tort action, the judgment in the tort action, and the insurance policy.

Prior to filing a responsive pleading, defendants Reicher and American Family filed a motion for summary judgment. Attached as an exhibit and incorporated in the motion was plaintiff's verdict–directing instruction against Reicher in the tort action.[3] The trial court sustained the motion and entered summary judgment in favor of Reicher and American Family. Plaintiff appeals.

"In determining whether the trial court erred in entering summary judgment in favor of the defendant[s] this court must view the record in the light most favorable to the plaintiff. . . . Summary judgment is a drastic remedy. . . . A 'genuine issue of fact' exists, precluding the rendition of summary judgment, when there is the 'slightest doubt' as to the facts . . ., so long as the fact in doubt is a material one which has 'legal probative force as to a controlling issue.'" *Peer v. MFA Milling Co.*, 578 S.W.2d 291, 292[1] (Mo.App.1979).

On this appeal plaintiff claims that the trial court's ruling was based on the doctrine of collateral estoppel. Defendants' brief seeks to uphold the ruling solely on that ground. The trial briefs of the parties, and the trial court's order sustaining the

---

1. The petition sought no relief against Reicher. Plaintiff's basis for including Reicher as a defendant in the instant action is not clear. Cf. *Mazdra v. Selective Insurance Company*, 398 S.W.2d 841, 845[4] (Mo.1966). In addition to the motion for summary judgment, Reicher filed "in the alternative" a motion to dismiss for failure to state a claim upon which relief can be granted. The trial court made no ruling on that motion and, on remand, it remains pending. This court expresses no opinion on its merits.

2. All references to statutes are to RSMo 1978.

3. Also attached to the motion for summary judgment were two affidavits which were countered to some extent by an opposing affidavit filed on behalf of plaintiff. Examination of the three affidavits shows that the issue of permission, and especially implied permission, was not set at rest by the contents of the affidavits.

motion, lend support to plaintiff's assertion that the trial court's order was based on collateral estoppel and no other basis is apparent from the record. Accordingly this opinion is confined to the question of whether the trial court's ruling is supported by that doctrine.

In *Oates v. Safeco Ins. Co. of America*, 583 S.W.2d 713, 719 (Mo. banc 1979), the supreme court pointed out that "traditionally . . . collateral estoppel (issue preclusion) precluded the same parties from relitigating issues which had been previously adjudicated" and that "the concept of collateral estoppel has been extended, allowing strangers to the prior suit to assert collateral estoppel against parties to the prior suit to bar relitigation of issues previously adjudicated." In listing the elements of the doctrine of collateral estoppel, the court included the following: "Whether the issue decided in the prior adjudication was *identical* with the issue presented in the present action." (Emphasis in original.)

In *Kansas City v. Graybar Elec. Co., Inc.*, 485 S.W.2d 38, 43 (Mo. banc 1972), the court said: "The basic rule of collateral estoppel is stated in *Abeles v. Wurdack* (Mo.Sup.), 285 S.W.2d 544, 546: '. . . A judgment between the same parties on a different cause of action is binding as to the *facts actually decided,* and *necessarily determined* in rendering the judgment, under what is called estoppel by verdict. . . .'" (Emphasis added.) Similarly, in *Salsberry v. Archibald Plbg. & Heat. Co., Inc.*, 587 S.W.2d 907, 915 (Mo.App.1979), this court said: "It is certain that collateral estoppel forecloses a party from litigating an issue *only* if that exact issue was *unambiguously* decided in the earlier case." (Emphasis added.)

It was, and is, plaintiff's position that the issue of whether Paul, Jr. had the permission, express or implied, of Reicher to drive the Dodge at the time of the accident was not decided in the tort action and that the trial court erred in invoking collateral estoppel.

Relying upon collateral estoppel, defendants Reicher and American Family take this position: (a) The judgment in favor of defendant Reicher in the tort action constituted a determination that Reicher "did not know or have reason to know that Paul, Jr. used the car"; (b) thus, Reicher "did not and, in fact, could not give express or implied permission [to Paul, Jr. to operate the car] within the meaning of the policy's omnibus clause"; and (c) accordingly plaintiff may not, in the instant action, attempt to bring Paul, Jr. within the category of "persons insured" under the American Family policy by showing that at the time of the accident Paul, Jr. was operating the Dodge with the permission of Reicher.

In support of their contention defendants rely primarily upon two things: (a) the contents of instruction 7,[4] plaintiff's verdict–directing instruction against Reicher in the tort action, and (b) the fact that the jury verdict in the tort action was in favor of Reicher and judgment was entered thereon.

The parties agree that plaintiff's theory in the tort action, so far as his claim against Reicher was concerned, was based on "negligent entrustment." Instruction 7 sought

4.    *"INSTRUCTION NO. 7*

Your verdict must be for Plaintiff and against Defendant Paul A. Reicher, Sr., if you believe:

First, Defendant Paul A. Reicher, Sr., either knew or had reason to know that Paul A. Reicher, Jr., was using the 1966 Dodge automobile, and

Second, Paul A. Reicher, Jr., was under the age of sixteen years at the time of this occurrence, and

Third, at the time Defendant Paul A. Reicher, Sr., either knew or had reason to know that Paul A. Reicher, Jr., was under the age of sixteen years, and

Fourth, that in making the 1966 Dodge automobile available to Paul A. Reicher, Jr., Defendant Paul A. Reicher, Sr., was thereby negligent, and

Fifth, that Paul A. Reicher, Jr., thereafter started the 1966 Dodge automobile from a stop at a time when such movement could not have been made with reasonable safety, and

Sixth, Paul A. Reicher, Jr., was thereby negligent, and

Seventh, such negligence of Paul A. Reicher, Jr., directly combined with the negligence of Defendant Paul A. Reicher, Sr., to cause damage to plaintiff,
    . . ."

to submit that theory to the jury. This opinion neither deals with nor rules on the correctness or incorrectness of instruction 7. The wording of the instruction does, however, affect the issue of the propriety of the trial court's application of collateral estoppel.

Under instruction 7 the jury was required to believe *all* of the seven propositions enumerated in it before they could return a verdict for plaintiff against Reicher. In their briefs and in their oral arguments before this court the parties agree that the propositions set forth in paragraphs Second, Third, Fifth and Sixth were not in serious dispute or, in view of the verdict against Paul, Jr., were resolved by the jury in favor of the plaintiff.

As plaintiff points out, the verdict in favor of Reicher was a general verdict and it does not show which element or elements of instruction 7 the jury failed to believe. Although the jury's disbelief of the proposition set forth in paragraph First might be one explanation for the verdict, plaintiff argues that is not the only possible explanation. Plaintiff says that it is also possible that the jury did believe the proposition of paragraph First and also believed that portion of paragraph Fourth which required the jury to find that Reicher made the Dodge available to Paul, Jr. Nevertheless, in spite of the foregoing beliefs, plaintiff says the jury might have returned the verdict in favor of Reicher for either of the following reasons: (a) a disbelief that Reicher was negligent as required by paragraph Fourth; (b) a disbelief that Reicher's negligence, if negligent he was, directly combined with the negligence of Paul, Jr. to cause plaintiff's damage as required by paragraph Seventh.

Defendants' brief says: "Under Missouri law, it is well settled that a person who knowingly permits another under sixteen years of age to operate a motor vehicle is negligent as a matter of law. Section 302.-060 RSMo (1978); *Thomasson v. Winsett*, 310 S.W.2d 33, 36 (Mo.App.1958). Thus, it would be impossible *as a matter of law* for the jury to find that Reicher, Sr. entrusted

the car to Reicher, Jr., without being negligent." In effect defendants argue that instruction 7, which plaintiff himself submitted, placed upon plaintiff the burden of proving certain propositions which plaintiff did not have to prove and which the jury was not free to disbelieve.

Defendants also argue that it is "self–evidently frivolous" for plaintiff to say that the jury could have found that Reicher was negligent in making the car available to Paul, Jr. but that such negligence did not combine with that of Paul, Jr. to cause plaintiff's damage. If Reicher was negligent in that respect, say defendants, "It is obvious that Reicher's negligence combined with that of Paul, Jr. to cause plaintiff's injury."

Defendants then argue that the *only* explanation for the verdict in favor of Reicher under instruction 7 is that the jury failed to believe the proposition set forth in paragraph First. Thus, defendants say, the jury found that Reicher did not know or have reason to know that Paul, Jr. was using the car on the occasion in question and, absent such knowledge, there could be no permission, express or implied, emanating from Reicher to Paul, Jr.

Defendants' argument is unsound. If it is assumed that instruction 7 was a correct statement of the law, the jury could have believed all of the propositions contained in that instruction except that portion of paragraph Fourth which required a belief that Reicher was negligent in making the car available to Paul, Jr. If the jury believed that he made the car so available, but in doing so was not negligent, they were required to return a verdict for Reicher. If, on the other hand, instruction 7 was an incorrect statement of the law, the verdict could be explained on the same basis.

It is no answer for defendants to say that it would be improper, "as a matter of law," for the jury to find that Reicher entrusted the car to Paul, Jr. without being negligent. Whether the instruction was proper or improper, it was the duty of the jury, in the tort action, to follow it in arriving at their verdict. Right or wrong, it was the law of

that case so far as that jury was concerned. Indeed any reversal which is based on an instruction error rests on the theory that the jury was influenced, and the verdict thereby tainted, by the error.

The doctrine of collateral estoppel does not come into play unless the issue presented in the second action is identical to the issue which was "unambiguously decided" and "necessarily determined" in the first action. If, as here, the prior adjudication, by reason of its ambiguity, fails to meet that requirement, the doctrine may not be invoked. No matter what its genesis, ambiguity exists. Ambiguity is the flaw and the mere fact that the flaw may stem from another flaw, consisting of an erroneous instruction, is of no moment.

The judgment is reversed and the cause remanded.

